**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Morton "Mort" H. FRANKLIN,
Defendant-Appellant.**

Nos. 78–5273, 78–5274.

United States Court of Appeals,
Fifth Circuit.

July 11, 1979.

Leonard W. Yelsky, Cleveland, Ohio, for Franklin.

Patty Ellen Merkamp, Dept. of Justice, T. George Gilinsky, Washington, D. C., for plaintiff-appellee.

Before THORNBERRY, CLARK and RONEY, Circuit Judges.

PER CURIAM:

Appealing his false loan application and obstruction of justice convictions, defendant *first* contends that the indictment should have been dismissed because it was based on information obtained by the Government from his attorney, and, *second* argues that he was denied a fair trial because the court improperly restricted the testimony of two defense witnesses and the cross-examination of a Government witness, and the Government failed to disclose a confidential informant. Concluding that the facts of this case do not support the relief requested, we affirm.

Defendant was charged with assisting in the submission of a materially false statement to a federally insured bank to obtain financing for a gun smuggling operation and with obstructing justice by preventing an investigation into these financial arrangements.[1]

---

1. Defendant was not convicted on the gun smuggling counts in the indictment. 22 U.S. C.A. § 1934(a) and 26 U.S.C.A. § 5861(e) and § 5871. He was convicted on the counts charg-

## DISMISSAL OF INDICTMENT

Prior to trial, defendant moved to dismiss the indictment on the ground that the Government had improperly obtained information from his attorney, Robert Senor. Senor had contacted Government agents for the purpose of arranging leniency for the defendant on a marijuana charge. Without detailing the evidence in relation to these contacts and the information revealed to the Government by Senor, it appears from the record that defendant cannot prevail under any theory presented.

■ In *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), the Supreme Court held it fatal to a conviction for the Government to obtain defense strategy from an attorney only where there was "a realistic possibility of injury to [defendant] or benefit to the State." *Id.* 429 U.S. at 558, 97 S.Ct. at 845.

■ Senor testified he had discussed defense strategy with his friend Edward Ragen, a Supervisory Customs Air Officer. Since Ragen did not communicate this information to his superiors and was not officially assigned to this case, and the Government did not purposely infiltrate the defense camp, there was no realistic possibility of harm to defendant or benefit to the Government. Senor's statement to Zisk that Franklin maintained his innocence cannot be regarded as a disclosure of the defense strategy.

Defendant further contends that the Government had made Senor its undercover agent. Although the affidavit for warrants to search codefendants' premises and automobiles had listed Senor as a "confidential source" and contained information relayed by Senor, the facts do not support the contention here made.

Acting on defendant's behalf in seeking to barter information for leniency on the marijuana charge, defendant's attorney initiated the contact. It appeared to the Government that he was acting with the approval of his client in his client's best interests. Throughout these communications Senor insisted that his client was innocent of any wrongdoing in the gun smuggling operation and only wished to exchange information incriminating others for leniency. This case is thus fundamentally different from *Messelt v. Alabama*, 595 F.2d 247 (5th Cir. 1979), in which an "utter perversion of the attorney-client relationship" resulted from the defense attorney's effort to gain leverage for the payment of his fee by suggesting to the prosecution that his client be charged with more serious offenses, and his proposal to his client that they participate together in a drug scheme. *Id.* at 251.

The Government's response to Senor's efforts was restrained and proper. The Government agent, Philip Zisk, told Senor he was not interested in bargaining and already had access to information about the smuggling operation. Although Zisk did list Senor as a source of information in the application for the search warrants, he testified that the information on which the affidavit was based came primarily from undercover officers, that Senor was only

ing him with making a false statement in a loan application to a federally insured bank, conspiracy to obstruct justice, and aiding and abetting in the obstruction of justice under the following statutes:

18 U.S.C.A. § 1014, which provides:
Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of . . . any bank the deposits of which are insured by the Federal Deposit Insurance Corporation . . . upon any application, . . . shall be fined not more than $5,000 or imprisoned not more than two years, or both.

18 U.S.C.A. § 2, which provides for punishment of anyone who assists in the illegal enterprise as a principal.
18 U.S.C.A. § 1503, which provides:
Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, . . . before . . any grand or petit juror, . . . or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.
18 U.S.C.A. § 371, which provides for punishment for a conspiracy to commit an offense against the United States.

one of four sources, and that the information provided by him was merely cumulative. Defendant had no interest in the property searched, was without standing to challenge the validity of the search, and did not attempt to do so. *See Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). Senor thus was not, as claimed, a confidential agent in the service of the Government.

■ Basically, Senor communicated three items of information to Zisk: (1) defendant's role in arranging the financing of what he thought was to be a legitimate gun operation; (2) trips to Cleveland by a codefendant to secure financing; and (3) details concerning Franklin's later discovery of gun smuggling. That Senor communicated information given by his client to the Government does not taint his conviction for several reasons. First, the information was available to the Government from other sources and not based on Senor's communications. Second, the information did not incriminate defendant. Third, the information was communicated voluntarily as an inducement to a plea bargain. Fourth, at a later meeting defendant himself communicated substantially the same information to the Government through Senor, thereby waiving any privilege he may have had and ratifying Senor's communication, if he had not in fact approved it from the outset. *See United States v. Pipkins*, 528 F.2d 559, 562–563 (5th Cir. 1976); *United States v. Cote*, 456 F.2d 142 (8th Cir. 1972). *See also* 8 Wigmore, *Evidence* § 2327 (McNaughton rev. 1961). Fifth, neither the information communicated by Senor nor the fact the communication took place was introduced at trial.

■ The only evidence introduced at the trial that implicated defendant and which related to Senor's communication was a codefendant's diary seized during the search.

Even assuming that evidence was obtained by the Government in an illegal manner, the proper remedy would be suppression, not dismissal of the prosecution. *See United States v. Blue*, 384 U.S. 251, 255, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966). Suppression was not sought. In any event, the evidence had minimal impact.

Therefore, the district court did not err in denying the motion to dismiss the indictment.

## DENIAL OF A FAIR TRIAL

Defendant alleges he was denied a fair and impartial trial because of three erroneous rulings: (1) refusal to permit exculpatory and impeaching testimony; (2) nondisclosure of the identity of a Government informant; and (3) restriction of the cross-examination of the Government's key investigator.

■ At the close of the Government's case, defendant sought to produce exculpatory evidence in his defense through the testimony of two attorneys. The trial court properly refused to permit them to testify. As to some of the testimony, no proper predicate was laid. Fed.R.Evid. 613(b).[2] *See United States v. Lipscomb*, 435 F.2d 795, 802 (5th Cir. 1970), *cert. denied*, 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971). The remainder was covered by the attorney-client privilege. *See Chirac v. Reinicker*, 24 U.S. (11 Wheat.) 280, 6 L.Ed. 474 (1826); *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978), *cert. denied*, 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978).

■ A magistrate had ordered the Government to have the fourth informant mentioned in the search warrant available at trial should defendant desire to call him. The order did not permit the informant to be called without a showing to the district court of the necessity for disclosure of his

---

2. Fed.R.Evid. 613(b) provides:

 **(b) Extrinsic evidence of prior inconsistent statement of witness.** Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same

and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in rule 801(d)(2).

identity. The court did not err in refusing to require the Government to reveal the identity of this informant since defendant did not meet his burden of showing why it should be revealed. *United States v. Hansen*, 569 F.2d 406, 411 (5th Cir. 1978); *United States v. Hernandez-Vela*, 533 F.2d 211, 213 (5th Cir. 1976). *See Roviaro v. United States*, 353 U.S. 53, 62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) (balancing test applied). No specific need for disclosure was shown and no evidence supplied by this informant was used at trial.

On cross-examination, the court refused to permit questions concerning the unsavory background of Agent Zisk's informants which were intended to discredit his testimony. Their background, however, had nothing to do with Zisk's testimony on direct. Although he did testify about the search, he did not refer to the warrant or his informants. Generally, cross-examination is limited by the scope of the direct examination and, here, there was no abuse of discretion in limiting the cross-examination. Fed.R.Evid. 611(b).[3] *See United States v. Markham*, 537 F.2d 187, 196 (5th Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977).

AFFIRMED.

---

3. Fed.R.Evid. 611(b) provides:

    **(b) Scope of cross-examination.** Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.