In re MIRACLE ENTERPRISES,
INC., Bankrupt.

Samuel J. KOLODNEY, Trustee,
Plaintiff,

v.

OLD COLONY CO–OPERATIVE BANK
NEWPORT NATIONAL BANK, et
al., Defendants.

Bankruptcy No. 79–108.

United States Bankruptcy Court,
D. Rhode Island.

July 13, 1984.

Stephen M. Kaplan, Irving Widett, Widett & Glazier, Boston, Mass., for Trustee.

Alfred B. Stapleton, Robert J. McGarry, Tillinghast, Collins & Graham, Providence, R.I., for defendants Old Colony Co-operative and Newport Nat. Banks.

Allan E. Hanson, Providence, R.I., for defendant Small Business Admin.

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

The defendants Old Colony Co-operative Bank and Newport National Bank (Bank) have filed a motion to prevent the trustee of Miracle Enterprises from examining Philip M. Champagne, either at deposition or at trial, concerning matters which it claims are protected as confidential under the attorney-client privilege. For the reasons stated below, the motion is denied.

The issue before this Court first surfaced in connection with a December 14, 1983 hearing on the trustee's complaint to sell the bankrupt's property free and clear of liens. That hearing was adjourned to afford the parties time for additional discovery. On January 27, 1984, Champagne was deposed by the Bank, and immediately after that deposition, the Bank filed the instant motion. The trustee intends to examine Philip Champagne "as a former officer of Newport concerning the conduct of the bank during the period prior to the bankruptcy filing." Trustee's Pre-Trial Memorandum, paragraph C(1). Cham-

pagne's testimony is being sought to show that the Bank's conduct with respect to the use of funds in the bankrupt's accounts was so "interfering and improper" that the Bank's secured claim should be subordinated to the claims of arms-length creditors. Trustee's Pre-Trial Memorandum, paragraphs B(2), and E(5), (6). The matter was heard on the trustee's objection, and the parties have briefed their respective positions.

The burden of establishing the elements of the attorney-client privilege is, of course, on the party seeking to assert the privilege. *See United States v. Stern*, 511 F.2d 1364 (2d Cir.1975); *In re Horowitz*, 482 F.2d 72 (2d Cir.1973), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). It is also clear that the application of common-law principles of attorney-client privilege encompassed by Federal Rule of Evidence 501 [1] requires that the party asserting the privilege "must prove that:

(1) Where legal advice of any kind is sought (2) from a professional legal advisor acting in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived...."

*United States v. Landof*, 591 F.2d 36, 38 (9th Cir.1978), citing 8 Wigmore, *Evidence*, § 2292 (McNaughton Rev.1961). The trustee argues, and we agree, that the Bank has not met its burden to show that with respect to Miracle Enterprises, communications between Champagne and the Bank were those between lawyer and client, made in confidence, for the purpose of obtaining legal advice. Quite to the contrary, the evidence discloses a unique arrangement wherein Champagne, while a Bank employee and an officer of Miracle Enterprises, acted essentially as "go-between" for the Bank and Miracle.

1. *See* 2 D. Louisell & C. Mueller, *Federal Evi-*   *dence* § 209 (1978), discussing the requisite ele-

The facts,[2] set forth briefly below, and which support this conclusion, are as follows: Champagne was employed by the Bank as an attorney, in charge of its title department. During 1976, he was approached by a close friend, William Simmons, who sought his advice and assistance in starting up Miracle Enterprises, a restaurant business. Champagne testified that he (Champagne) handled all of the incorporation paperwork for Miracle, loaned money to the business,[3] and served during most of the time in question as an officer of Miracle Enterprises. He also stated that he put Simmons, the principal of Miracle, in contact with Old Colony senior vice-president Robert Baggesen, for the purpose of obtaining bank financing for the business. According to Baggesen, the Bank was not only aware of Champagne's close association with Miracle, but expected that he would continue in that capacity. Champagne's testimony is uncontradicted that, notwithstanding his own suggestion that he resign as an officer of Miracle to avoid possible conflicts, the Bank encouraged him to continue in both capacities—as bank title attorney and as secretary of Miracle. It was his understanding that the Bank wanted a liaison with Miracle, so that it "could control and have an inside track on what was going on." TR. 76.

Clearly, the bare fact that Champagne was a title attorney for the Bank does not render confidential or privileged, every communication between him and the Bank. *United States v. Bartone*, 400 F.2d 459 (6th Cir.1968), *cert. denied*, 393 U.S. 1027, 89 S.Ct. 631, 21 L.Ed.2d 571 (1969) (that a person is an attorney does not render privileged everything he does for and with a client); *see also Citizens Trust Co. v. Blasbalg (In re Pacific Enterprises, Ltd.)*, 36 B.R. 426 (Bankr.D.R.I.1984). The privilege applies only to communications involving legal matters; business or other advice given by one who also happens to be an attorney is not privileged. *Matter of Walsh*, 623 F.2d 489 (7th Cir.1980), *cert. denied*, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980); *Diamond v. City of Mobile*, 86 F.R.D. 324 (S.D.Ala.1978); *Federal Savings and Loan Insurance Corp. v. Fielding*, 343 F.Supp. 537, 546 (D.Nev. 1972) (when an attorney and client enter business dealings together "their relationship is a business relationship, not a professional one, and their confidences are business confidences unprotected by a professional privilege"). Notwithstanding the Bank's unsupported assertion to the contrary, it appears that advice provided by Champagne to the Bank on matters involving Miracle was primarily in a business, not legal, context. According to Champagne, whose testimony is largely accepted, although the Bank consulted him for legal advice on matters relating to titles and real estate, with respect to most other legal matters, including those involving Miracle Enterprises, the Bank used outside counsel hired on retainer. Champagne also testified that because of his obvious dual role, he was not asked and was careful not to offer legal advice concerning dealings between Miracle and the Bank. The Bank has failed to present any convincing evidence to refute this testimony.

Champagne spoke with Simmons on a daily basis, offering opinions on everything from menu mix, to hiring of personnel, to whether the quantity of lettuce purchased should be reduced, on the advice of the board members of the Bank. Baggesen readily conceded that the Bank knew of Champagne's close relationship with Miracle and was perfectly satisfied to have him share with Simmons its concerns over the performance of the business. But specifically with respect to what was to be re-

ments of the attorney-client privilege.

**2.** The following opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rules 9014 and 7052.

**3.** Champagne holds from Miracle Enterprises a $17,000 note for money he loaned to the busi-

ness. Also, Champagne has filed a proof of claim (#30) to which no objection has been raised, which includes the $17,000, as well as a claim in the amount of $25,000 for legal services performed on behalf of Miracle.

layed and what was not, Baggesen also acknowledged "there were no defined ground rules." TR. 38. In view of Champagne's financial involvement with Miracle and personal friendship with Simmons, the position taken here by the Bank is untenable, if not ludicrous.

■ Concerning the issue of confidentiality, "when a matter is communicated with the intention or understanding that it is to be repeated to another, the content of the statement is not within the privilege." *United States v. Bump*, 605 F.2d 548, 551 (10th Cir.1979); *United States v. Tellier*, 255 F.2d 441 (2d Cir.1958), *cert. denied*, 358 U.S. 821, 79 S.Ct. 33, 3 L.Ed.2d 62 (1958). According to Champagne, it was understood by all concerned that information imparted to him by the Bank was to be conveyed to Miracle, and vice versa, for the mutual benefit of both parties. Upon Baggesen's own recollection, Champagne was given no specific instructions to keep confidential any information relating to Miracle Enterprises. The Bank virtually concedes the absence of confidentiality when it acknowledges that Champagne "considered himself Mr. Simmons' alter-ego," and that he and Simmons talked every day about some aspect regarding the Bank: "the next loan," "the overdraft situation," and "general advice." Bank's Post-Hearing Memorandum at 8. In this situation, which the Bank not only condoned but in fact encouraged, where secrecy was neither expected nor desired, there is no basis whatsoever for imposing the privilege. *See In re Blier Cedar Co., Inc.*, 10 B.R. 993 (Bankr.D.Me. 1981); *see also United States v. Miller*, 660 F.2d 563 (5th Cir.1981). Apart from the Bank's present unsubstantiated and self-serving conclusions that Champagne was its attorney, and that communications were intended as confidential, the record is entirely devoid of facts to support a claim of privilege.

■ Having concluded that the threshold elements of the attorney-client privilege have not been met, the issue of whether a waiver occurred need not be addressed. Nevertheless, in deference to the argu-ments advanced by the Bank in its Post-Hearing Memorandum, where the Bank disputes that the privilege was waived, and for possible appellate purposes, we briefly address that issue here. Intent is not necessary to constitute a waiver, and the failure to take sufficient precautions to preserve one's privilege may result in waiver by conduct, whether that result was contemplated or not. *See In re Grand Jury Investigation of Ocean Transportation*, 604 F.2d 672, 675 (D.C.Cir.1979), *cert. denied*, 444 U.S. 915, 100 S.Ct. 229, 62 L.Ed.2d 169 (1979); *Underwater Storage, Inc. v. United States Rubber Co.*, 314 F.Supp. 546, 549 (D.D.C.1970). In our opinion, whatever privilege the Bank might otherwise have been entitled to raise under the circumstances was plainly and unequivocably waived by its acquiescence in and encouragement of Champagne's dual role, and in its failure to identify the confidential nature of any communications or discussions concerning Miracle.

■ Fundamentally, the attorney-client privilege "protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 404, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976); *see also United States v. Goldfarb*, 328 F.2d 280 (6th Cir. 1964). Its purpose is to allow a client to reveal possibly damaging information to his lawyer without incurring the risk of adverse disclosure by his own counsel. But the attorney-client privilege has such profound impact on the full disclosure of the truth that it must be construed within limits consistent with the logic of its principle. *Haymes v. Smith*, 73 F.R.D. 572, 576 (W.D.N.Y.1976); *Underwater Storage, Inc. v. United States Rubber Co., supra; Radiant Burners, Inc. v. American Gas Ass'n*, 320 F.2d 314, 323 (7th Cir.1963).

The Bank has clearly failed to meet its burden of showing either that communications with Champagne concerning Miracle were for the purpose of obtaining legal advice, or that they were made in confidence. All the evidence, in fact, points to

the contrary. The "motion to limit scope of examination and in limine" is denied.

Enter judgment accordingly.