484 So.2d 1299 (1986)
Timothy TUCKER, Appellant,
v.
STATE of Florida, Appellee.
No. 84-205.
District Court of Appeal of Florida, Fourth District.
March 5, 1986.
Rehearing Denied April 9, 1986.
Richard L. Jorandby, Public Defender, and Gary Caldwell, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Richard G. Bartmon, Asst. Atty. Gen., West Palm Beach, for appellee.
ANSTEAD, Judge.
We affirm appellant's convictions for attempted murder, kidnapping and grand theft. We find no error that merits reversal among the issues raised by appellant including his claim that the court erred in allowing a court-appointed psychiatrist to testify against him.
Appellant, Timothy Tucker, was charged with attempted first degree murder, kidnapping and grand theft. After his arraignment, his attorney made a motion pursuant to Florida Rule of Criminal Procedure 3.216(a) that the court appoint a psychiatric expert to evaluate Tucker. Dr. Hoover was appointed to assist the defense. On the basis of this evaluation Tucker was initially declared incompetent to stand trial. However, after treatment in a state hospital, appellant was subsequently found competent to stand trial.
The defense filed notice of its intent to rely on the insanity defense at trial and listed Dr. Hoover as one of the witnesses. Consequently, the state took Dr. Hoover's deposition, and later secured disclosure of Dr. Hoover's notes without objection by *1300 Tucker's attorneys. At trial, Dr. Hoover testified on rebuttal for the state, over appellant's objection, and presented testimony adverse to Tucker's insanity defense.
The state presented evidence that Tucker and his brother, Ernest Shorey, shared an apartment with the victim, Mike Varnum, in Lake Worth. Varnum testified that Ernest and Tucker beat and stabbed him, placed him in a sleeping bag, and drove him to a rural area, where Tucker stabbed him several more times. Tucker returned to the apartment and went to see a neighbor, Cindy Kimber, to whom he confessed the crime. After visiting Ms. Kimber, Tucker rode Varnum's bicycle to the home of a friend named Al. Sergeant Strohacker of the Lake Worth Police arrested Tucker at Al's house. Ms. Kimber's testimony corroborated that of Varnum. Ms. Kimber also testified that Tucker had told her he would plead insanity if caught.
At the trial, Tucker's defense was that he was insane at the time of the crime. Tucker testified in his own defense. The insanity defense was predicated upon the argument that Tucker's brother completely dominated him and "programmed" him to kill Varnum. The defense introduced witnesses who testified to Tucker's reputation as a nonviolent person. In addition, Dr. Villalobos, a psychiatrist, testified that Tucker had a manic depressive disorder and was in a psychotic episode at the time of the crime. Ms. LaFehr, the jail psychologist, also testified that she thought Tucker was unable to form specific intent at the time of the crime. On rebuttal, however, Dr. Hoover stated that appellant had a sociopathic personality and was trying to manipulate the situation. The jury rejected appellant's defense and found him guilty on all counts.
There is no doubt that communications from court appointed mental health experts that are assisting the defense fall within the attorney-client privilege. Rule 3.216(a) states:
Rule 3.216. Insanity at Time of Offense: Notice and Appointment of Experts
(a) When in any criminal case counsel for a defendant adjudged to be indigent or partially indigent, whether public defender or court appointed, shall have reason to believe that the defendant may be incompetent to stand trial or that he may have been insane at the time of the offense, he may so inform the court who shall appoint one expert to examine the defendant in order to assist his attorney in the preparation of his defense. Such expert shall report only to the attorney for the defendant and matters related to the expert shall be deemed to fall under the lawyer-client privilege. [Emphasis supplied.]
Rule 3.216(a) codified the court's holding in Pouncy v. State, 353 So.2d 640 (Fla. 3d DCA 1977), that where an expert is hired solely to assist the defense and will not be called as a witness, the state may not depose the expert or call him as a witness.
This court followed Pouncy in Ursry v. State, 428 So.2d 713 (Fla. 4th DCA), pet. for rev. denied, 438 So.2d 834 (Fla. 1983). In Ursry, the defense had filed a notice of intent to use the expert as a witness, but later informed the state of its decision not to do so. The state was then allowed to call the expert as a witness over the objection of the defense. On appeal, the state argued that once an expert is placed on a witness list, the attorney-client privilege is waived as a matter of law even though the expert's opinions and knowledge had not yet been disclosed to the state. This court rejected that argument, noting that at the initial hearing to exclude the expert's testimony, the defense stated that it did not intend to use him as a witness; and that the state admitted that its decision to subpoena the expert came after it had been notified that the defense would not call him. 428 So.2d at 714. See also Townsend v. State, 420 So.2d 615 (Fla. 4th DCA 1982).
We believe this case is distinguishable from Ursry and that the trial court did not err in finding a waiver of the privilege granted by Rule 3.220. Here, the defense not only placed Dr. Hoover's name on its *1301 witness list but also allowed the state to take her deposition pursuant to Florida Rule of Criminal Procedure 3.220. From her deposition, it became apparent that Dr. Hoover had reversed her position concerning Tucker's sanity at the time of the crime. Subsequently, when the state moved the court to compel disclosure of Dr. Hoover's notes, the defense still did not assert the protection of Rule 3.220. The notes were disclosed. At trial, the court denied appellant's oral motion to exclude Dr. Hoover's testimony on the ground that the attorney-client privilege had been waived by the defense counsel's compliance with the state's discovery requests. The court noted that the defense had failed to raise the issue at an earlier point despite the fact that it had notice, shortly after the state took Hoover's deposition, that the prosecution intended to call Hoover in rebuttal. Counsel actually conceded that it had not done so as part of a conscious strategy since it believed that under Ursry, no objection need be made until the state actually calls the witness at trial.
The law is clear that once communications protected by the attorney-client privilege are voluntarily disclosed, the privilege is waived and cannot be reclaimed. Hoyas v. State, 456 So.2d 1225 (Fla. 3d DCA 1984); Hamilton v. Hamilton Steel Corporation, 409 So.2d 1111 (Fla. 4th DCA 1982). However, Tucker claims that the privilege is personal to him and could only be waived by him, not his attorney. In Schetter v. Schetter, 239 So.2d 51, 53 (Fla. 1st DCA 1970), an attorney tape recorded his conversations with his client and gave the tape to a psychiatrist. On the basis of this tape, the psychiatrist testified at hearing that the client should be placed under guardianship. The appellate court reversed the trial court's order, holding that the attorney had no authority to disclose the conversations to the psychiatrist. We are not faced with that situation here. In most instances, an attorney has implied authority to waive the privilege for his client. United States v. Miller, 660 F.2d 563, 572 (5th Cir.1981), reh'g denied, opinion modified, 675 F.2d 711, vacated for mootness, 685 F.2d 123 (1982); Ehrhardt, Florida Evidence, 2d Ed., § 507.1. See also § 90.502(3)(e), Fla. Stat. (1983).
The issue in Miller was whether ledger books that had been previously turned over to the I.R.S. by Miller's accountant continued to be privileged. The appellant argued that the accountant did not have the authority to make the disclosure. The court rejected this argument. 660 F.2d at 571, 572. In reaching its decision the court also discussed the waiver of a client's privilege by his attorney. The court stated (citing Wigmore, Evidence, § 2325):
Since the attorney has implied authority from the client ... to make admissions and otherwise to act in all that concerns the management of the cause, all disclosures (oral or written) voluntarily made to the opposing party or to third persons in the course of negotiations for settlement, or in the course of taking adverse steps in litigation ... are receivable as being made under an implied waiver of privilege, giving authority to disclose the confidences when necessary in the opinion of the attorney. This is so unless it appears that the attorney has acted in bad faith toward the client.
660 F.2d at 572 (emphasis in original). In our view, this reasoning is applicable here. It is the disclosure of information that is protected by the rule, not the particular form of disclosure. For instance, if the expert is utilized as a witness at trial the privilege is waived, and the state may inquire as to the full extent of the expert's relevant knowledge and opinions. Similarly, if full disclosure of the expert's views and knowledge is made before trial, the privilege against disclosure is also lost.[1] We agree with the trial court that the privilege was waived here when the defense *1302 allowed the psychiatrist's deposition to be taken by the state, and then failed to object to the disclosure of other information from the psychiatrist.
In accordance with the above we affirm the appellant's convictions.
DELL and WALDEN, JJ., concur.
NOTES
[1] This court has apparently ruled to the contrary in a civil context. See General Tire & Rubber Co. v. Maddox, 372 So.2d 123 (Fla. 4th DCA 1979). However, the General Tire case was a PCA and of no legal precedential value.