**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Richard AUTHEMENT,
Defendant-Appellant.**

No. 79–5201
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Dec. 5, 1979.

Rehearing Denied Jan. 4, 1980.

Daniel J. Markey, Jr., New Orleans, La., for defendant-appellant.

John Bilyeu Oakley, Walter W. Barnett, Drew S. Days, III, Asst. Attys. Gen., Civil Rights Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before AINSWORTH, FAY and RANDALL, Circuit Judges.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

PER CURIAM:

The appellant, Richard Authement, a former Houma, Louisiana police officer, appeals his jury conviction for willful deprivation of the civil rights of Cecil Weldon Robbins, a burglary suspect, under color of law in violation of 18 U.S.C. § 242.

Authement and codefendant Duplantis were among several police officers who answered a burglary call at the Houma Greyhound Bus Station in the early morning hours of June 25, 1978. Robbins was ordered out of the building by the police officers and arrested. The Government alleged that Robbins was then shoved down on the pavement, beaten and kicked by Authement and Duplantis. Robbins could not positively identify which officers committed this initial assault, but one of Authement's fellow officers who was present that morning testified that Duplantis either kicked or kneed Robbins while he was in a prone position on the ground and that Authement hit Robbins' head on the cement several times. Robbins was then handcuffed and put in the back seat of a patrol car. Authement opened the right rear door of the car, ordered Robbins to move over and, according to Robbins, jabbed Robbins several times with a nightstick. Robbins was then taken to the police station, the handcuffs were removed, and he was left alone in a small room. Robbins testified that Authement entered the room wearing a set of brass knuckles and threatened to use them if Robbins did not cooperate. Authement then struck Robbins in the chest with the brass knuckles, knocking him into a nearby chair. In addition, Robbins testified that one of the police officers whom he could not identify stomped on his bare feet; one of the police officers who testified at trial identified Duplantis as the officer who stomped on Robbins' toes.

Robbins was booked for burglary and resisting arrest, but the resisting arrest charge was later dropped. The next day he sought medical treatment and was hospitalized for eleven days. He was suffering from facial abrasions and contusions, a fracture on the bone underneath the left eye, and bruised kidneys. Hospital photographs of Robbins' injuries were admitted into evidence over objection.

Authement gave the brass knuckles and his nightstick to his attorney, Daniel Markey. The Government served a subpoena *duces tecum* on Markey demanding production of the two items. Authement moved to quash the subpoena, contending *inter alia* that production would violate the attorney-client privilege and his fifth amendment privilege against compelled self-incrimination. After a hearing, the magistrate recommended quashing the subpoena, but the district court denied the motion. Markey produced the requested items. Only the brass knuckles were introduced into evidence.

Authement was acquitted on Count One (the bus station assault), and was convicted on Count Two (the assault with the nightstick in the patrol car) and Count Three (the assault with the brass knuckles in the police station). Duplantis was acquitted on Count One and convicted on Count Three. He was not charged in Count Two.

Authement raises two issues on appeal. First, Authement argues that the photographs of Robbins' injuries should not have been admitted into evidence at trial because they were irrelevant and unfairly prejudicial. Second, he argues that the subpoena *duces tecum* by which the brass knuckles were obtained from his attorney should have been quashed, and that the district court erred by admitting the brass knuckles obtained thereby into evidence. We find no error in the trial and accordingly affirm.

## THE PHOTOGRAPHS

Authement contends that because there was some testimony concerning alternative ways by which Robbins could have sustained his injuries and because Robbins could not identify which defendant, if any, caused each injury and how each was caused, the photographs were irrelevant. According to the Federal Rules of Evidence, " [r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the deter-

mination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The indictment charged Authement and Duplantis with beating and assaulting Robbins. Because the Government claimed and Robbins testified that the beatings resulted in injuries which sent him to the hospital, his injuries and their severity were facts of consequence to the trial. Whether the photographs were irrelevant to another issue— for example, how his injuries were sustained or by whom they were inflicted—is not important, because they tended to show that injuries were sustained and document their severity.

▮ Authement argues that the photographs, even if relevant, should have been excluded under Federal Rule 403 as highly prejudicial. Under Rule 403, a Judge may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." This balancing determination by the trial court is reversible error only if it amounts to an abuse of discretion. *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979); *United States v. Kaiser*, 545 F.2d 467, 476 (5th Cir. 1977). In light of the relatively mild nature of these photographs, we can discern very little danger of a jury verdict based on an emotional reaction to them. If any such danger was present, it certainly did not *substantially* outweigh the probative value of the photographs. The trial judge did not abuse his broad discretion in admitting them.

### THE BRASS KNUCKLES

Authement argues that the trial court erred in ordering production of a pair of brass knuckles by subpoena *duces tecum* directed to his attorney, Daniel Markey. The grand jury indicted Authement on December 28, 1978. On January 18, 1979, a subpoena *duces tecum* was served on Authement's counsel. The subpoena ordered Markey to bring the following items to the trial:

"a) The black wooden or nylon night stick that former Houma Police Officer Richard Authement was carrying on the morning of June 25, 1978.

b) The brass or metal knuckles that former Houma Police Officer Richard Authement had in his possession on the morning of June 25, 1978."

Authement moved to quash the subpoena, arguing that its issuance was in violation of Fed.R.Crim.P. 16(b), his attorney-client privilege, and his fifth amendment right against compelled self-incrimination. The magistrate recommended that the subpoena be quashed, but the district court denied the motion and ordered Markey to comply. Markey produced both the nightstick and the brass knuckles for the court on the first day of the trial. Authement argues on appeal that the subpoena should have been quashed and that the trial court improperly admitted the brass knuckles in violation of his attorney-client privilege and his fifth amendment right against compelled self-incrimination.

▮ The Supreme Court has made it clear that the privilege against compelled self-incrimination applies only to situations in which an individual "is compelled to make a *testimonial* communication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408, 96 S.Ct. 1569, 1579, 48 L.Ed.2d 39 (1976); *Andresen v. Maryland*, 427 U.S. 463, 473–75, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Schmerber v. California*, 384 U.S. 757, 763–64, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Three elements must exist simultaneously before the fifth amendment is violated. There must be (1) compulsion of a (2) testimonial communication that is (3) incriminating. *Matter of Grand Jury Empanelled*, 597 F.2d 851 (3rd Cir. 1979). If any one of these conditions is not satisfied, compelled self-incrimination within the meaning of the fifth amendment is not at stake.[1]

---

1. In this case, production of the brass knuckles was sought not from Authement but from his attorney. *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) held that compelled production of documents by way of subpoena from a client's attorney does not im-

Even if production of the brass knuckles would involve a testimonial communication that the knuckles existed, that they were the ones Authement was carrying at the time of the assault, and that they were in his possession at the time of the subpoena, this testimonial communication was not incriminating because it was never used against Authement in any way. We agree with Judge Gibbons' statement in *United States v. Fisher*, 500 F.2d 683, 694 (3d Cir. 1974) (Gibbons, J., concurring), *aff'd* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), that a subpoena should be enforced even for materials owned and possessed by the witness so long as "(1) the fact of his possession was not of evidentiary significance or his production was not used for that evidentiary purpose, (2) their mere production did not require his testimony, and (3) they could be authenticated through some other witness." Neither Authement nor his attorney testified at trial. The fact that Markey produced the knuckles was never revealed to the jury, nor did the possibly testimonial communication of authentication lead to any other evidence or cause any injury whatsoever. The Government was very careful not to alert the jury to the fact that the knuckles had been obtained by way of subpoena. They were authenticated not by Authement or Markey, but by Donna Clenney, another Houma police officer, who was able to identify them as the ones Authement had shown to her on the morning of the assault. Her identification of the knuckles was based on the fact that they had been filed down in a relatively unique way, which she clearly remembered. No testimonial communication compelled by production of the knuckles reached the ears of the jury.

 Nor did any testimonial communication which might have been compelled by the production harm Authement in any other way. Since the grand jury had already indicted Authement at the time the subpoena was issued, production of the knuckles did not incriminate him before the grand jury or contribute to his indictment. The possibly testimonial communication of authentication did not lead to any other evidence which itself might have contributed to Authement's conviction. In sum, even if production of the knuckles constituted a compelled testimonial communication, the record reveals no instance in which that testimonial communication could be considered to be incriminating in any way. Since the knuckles themselves were not testimonial in nature, their introduction into evidence did not constitute a fifth amendment violation. We hold, therefore, that on the facts here presented there was no violation of the privilege against compelled self-incrimination because no incrimination existed.[2]

Finding no error in the introduction of either the photographs of Robbins' injuries or Authement's brass knuckles, we affirm Authement's conviction.

AFFIRMED.

---

plicate the client's fifth amendment privilege because it does not compel the client to do anything. 425 U.S. at 396–401, 96 S.Ct. 1569. *Fisher* makes clear, however, that as long as the material to be produced would be privileged in the hands of the client, it is also privileged in the hands of the attorney by means of the attorney-client privilege where the transfer was made for the purpose of obtaining legal advice. 425 U.S. at 402–05, 96 S.Ct. 1569. The proper inquiry when material has been transferred to an attorney for the purpose of legal advice and the subpoena is directed to the attorney, then, is whether the subpoena, if directed to the client himself, would require (1) compulsion of a (2) testimonial communication that is (3) incriminating.

2. We specifically reserve the question of whether the fifth amendment privilege against compelled self-incrimination would be violated in a situation in which the testimonial communication of authentication either was introduced before the jury or led to other evidence or injury to a defendant. This case does not present that issue. Likewise, we reserve the question whether, at the time of the issuance of the subpoena, a substantial risk of self-incrimination would exist. Here we are able to say that there was no incrimination because, viewing the situation in retrospect, no incrimination actually occurred.