**In re GRAND JURY SUBPOENA.**

**UNITED STATES of America,
Appellant,**

v.

**Stephen KENT, d/b/a Kent Oil and Gas Company, Appellee.**

**No. 80–5377.**

United States Court of Appeals,
Fifth Circuit.
Unit B

June 1, 1981.

Frank W. Trapp, Sp. Asst. U. S. Atty., Tampa, Fla., William C. Bryson, Chief, Appellate Section, Criminal Division, U. S. Dept. of Justice. Washington, D. C., for appellant.

Albert J. Krieger, Miami, Fla., for appellee.

Before MARKEY *, Chief Judge, and HILL and THOMAS A. CLARK, Circuit Judges.

MARKEY, Chief Judge:

The government appeals from an order of the District Court for the Middle District of Florida barring enforcement of grand jury subpoenas. We affirm.

### Background

On November 27, 1979, a federal grand jury sitting in the Middle District of Florida issued two identical *subpoenas duces tecum* in connection with an investigation of the Kent Oil and Trading Company (Kent Oil). One subpoena was directed to the Custodian of Records of Kent Oil, 2300 Houston Natural Gas Building, Houston, Texas, and the other directed to Dianne Allen, at the same

---

* Of the U.S. Court of Customs and Patent Appeals, sitting by designation.

address. The subpoenas were served on November 29, 1979, returnable on December 18, 1979.

Kent Oil is a sole proprietorship, owned by Stephen R. Kent (Kent). It employs ten persons in offices in Houston and Los Angeles, and has been engaged in the trading of petroleum products since 1973. The parties agree that, when the grand jury subpoenas were served, Kent was the "custodian of records" of Kent Oil and Allen was its comptroller.

Each subpoena covered the period from June 1, 1973—December 31, 1975, and commanded that the following documents be produced:

1. All documents which are concerned or related in any manner to the Company's accounts at financial institutions including, but not limited to, the name and address of each such financial institution and the account(s) number; the date the accounts were opened; deposit and withdrawal records; balance statements; cancelled checks; and authorizations to transact business on the account.

2. All accounting and bookkeeping records of the Company, including but not limited to, all cash disbursement journals; cash receipt journals; accounts receivable and accounts payable journals; and general ledgers.

3. All documents that reflect, incorporate, concern, relate or refer to the Company's payment of money to another or bestowing any benefit upon another in connection or related to the sale, purchase, exchange, or similar dealing of petroleum product(s), except those documents concerned exclusively with commission paid to salesmen employed full time by the Company need not be produced.

4. All documents that reflect, incorporate, concern or relate to payment of money or bestowing a benefit by the Company upon any employee, agent or officer of another entity involved in any manner in the oil industry or an employee or official of any governmental agency.

5. Such documents as will identify the Company's employees and agents, both during the relevant period and currently.

6. All documents that refer, relate, incorporate or concern each contract, arrangement and understanding between the Company and Charter Oil Company, Charter International Oil Company and Kern County Refining Company.

7. All documents that refer, relate, incorporate or concern the payment of money in connection with or related to each contract, arrangement or understanding responsive to Demand Number 6 (paragraph six) above.

Kent did not appear before the grand jury but instead moved, on February 12, 1980, for a court order quashing both subpoenas. Kent said he was the exclusive owner of the subpoenaed documents and that compelled production of those documents would violate his fifth amendment privilege against self-incrimination. On February 13, 1980, the government filed an opposition to Kent's Motion to Quash.

After one continuance, Allen appeared before the grand jury and testified on February 13, 1980. Kent withdrew the motion to quash the Allen subpoena on that day. Allen declined to produce the subpoenaed documents and the government moved for an order to show cause why she should not be held in contempt. In reply, Allen said she was powerless to produce the documents because Kent exercised exclusive control over them and had instructed her not to produce them. To support that assertion, she filed an affidavit on February 25, 1980, stating in pertinent part:

\* \* \* \* \* \*

2. I presently am employed as the Comptroller of Kent Oil . . . which is a sole proprietorship owned by Mr. Stephen Kent and headquartered in Houston, Texas, with a second office in Los Angeles, California. Other than Mr. Kent, Kent Oil . . . presently has 10 employees . . .

3. I started work for Kent Oil . . . in July, 1977 . . .

\* \* \* \* \* \*

5. I report directly to Mr. Kent, and regularly stay in contact with him as relates to the performance of my duties. Mr. Kent has residences in both Houston, Texas and Los Angeles, California, and splits his time between the Houston and Los Angeles offices. He spends a significant portion of his time in the Houston office, and is regularly present during business hours in connection with the operation of his company.

\* \* \* \* \* \*

10. Because I was not an employee at the time, I played no role in the preparation, filing or maintenance of any documents during 1973, 1974 and 1975. Although I now have access to documents dated during 1973, 1974 and 1975, as do the other employees of the Company, I have never exercised nor have I had any reason to exercise any exclusive control of such documents to the exclusion of any other employee. Thus, as to documents generated during the 1973 thru 1975 time period covered by the Subpoena, I do not have any exclusive or other special responsibility with respect to any such documents.

11. To the best of my knowledge, no employee has been refused access to the business records of the Company. While Mr. Kent entrusts to his subordinates such as myself certain aspects of the day-to-day operations of the Company and charges us with the general responsibility for maintaining certain of the Company's records of his behalf, any such records belong to Mr. Kent as the proprietor of the business.... Mr. Kent has not relinquished his possession and control over the Company's records to any employee, including myself, and indeed he has so informed me.

\* \* \* \* \* \*

14. In early February, 1980, and prior to my traveling to Jacksonville, Flori-da, Mr. Kent reiterated to me that all records of the Company are "his records and no one else's." He further informed me that no employee of Kent Oil ... including myself, had permission or authority to take any of the documents of the Company anywhere.... Paul Norris, an associate of Albert Krieger who is counsel for the Company in this matter, also informed me by telephone on February 11, 1980, and in person on February 13, 1980, of Mr. Kent's position with respect to the Company's records and my lack of authority to take them to Jacksonville. Having been so informed, I followed these instructions.

On April 18, 1980, the district court issued an order on Kent's Motion to Quash, reading in pertinent part:

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH

\* \* \* \* \* \*

The Court finds that Kent Oil ... is a sole proprietorship of Steven Kent and that the government has not shown that either Diane Allen or any other custodian of the records exercised such exclusive control or possession of the subpoenaed documents to vitiate Kent's Fifth Amendment rights. At the hearing counsel for Kent volunteered to produce all subpoenaed documents the company is required by law to prepare and/or maintain.

Therefore, it is

ORDERED:

1. That Kent Oil ... shall produce immediately all documents requested by the subpoena which it is required by law to prepare and/or maintain.

2. That by noon on April 28, 1980, Kent Oil ... shall provide the government with a list specifically identifying all documents covered by the subpoena which it refuses to produce and the reason for such refusal.

The court issued a separate order of even date denying the government's motion for issuance of an Order to Show Cause directed to Allen. Kent made timely delivery of the documents specified in paragraph 1 of the order and of the list of documents required by paragraph 2. On May 14, 1980, the government appealed.

The government's notice of appeal is directed only to denial of its motion for a Show Cause order, and not to the separate order granting in part Kent's Motion to Quash. However, Kent has not been prejudiced. The district court barred enforceability of both subpoenas, and the parties have argued the enforceability of both subpoenas. For purposes of this appeal, we construe the notice of appeal as though taken from one district court order partially quashing both subpoenas. *See Comfort Trane Air Conditioning v. Trane Co.*, 592 F.2d 1373, 1390 n. 15 (5th Cir. 1979), discussing the purpose underlying the notice of appeal requirement.

### The issues

(1) Whether the district court's order is ripe for review.

(2) Whether Kent's fifth amendment privilege protects "non-required" documents from production pursuant to the Kent subpoena.

(3) Whether Kent's fifth amendment privilege protects "non-required" documents from production pursuant to the Allen subpoena.

### OPINION

#### (1) *Ripeness*

■ The government urges that this court has jurisdiction to review a district court order quashing a grand jury *subpoena duces tecum* and, for reasons stated in *Matter of Grand Jury Empanelled (Colucci)*, 597 F.2d 851 (3d Cir. 1979), we agree. Jurisdiction is alternatively provided by 18 U.S.C. § 3731 (1976), authorizing appeals by the government from a district court order "excluding evidence" in a "criminal proceeding",[1] or by 28 U.S.C. § 1291 (1976), the general jurisdictional statute authorizing appeals from final decisions of the district courts.[2] *Colucci*, 597 F.2d at 854–58.

Kent argues that the law stated in *Colucci* does not apply to the instant facts because the appealed order here did not quash a subpoena. According to Kent, the order is preliminary in nature, does not exclude evidence within the meaning of § 3731, and is not a final decision within the meaning of § 1291, in essence, that the order is not ripe for review.

That argument lacks merit. The order does exactly what it purports to do, namely, it grants in part Kent's motion to quash the subpoena directed to him on the ground that compelled production of the material demanded in the quashed portion would violate his fifth amendment privilege. In form and in practical effect, the order quashes the subpoena to the extent that it calls for production of Kent Oil records *not*

---

**1.** 18 U.S.C. § 3731 (1976) reads in pertinent part:

§ 3731. Appeal by United States

. . . .

An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts [sic] suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.

. . . .

The provisions of this section shall be liberally construed to effectuate its purposes.

**2.** 28 U.S.C. § 1291 (1976) reads:

§ 1291. Final decisions of district courts

The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

required by law to be prepared or maintained.

Kent says our jurisdiction is lacking because the order would permit further proceedings in the district court. The government agrees that further proceedings may occur. Any such proceedings, however, would be limited to a determination of the scope of "required records" not entitled to fifth amendment protection, if a dispute occurs concerning one or more documents on Kent's list. That a potential exists here, for further proceedings limited to the applicability of the order to particular documents, does not in itself defeat the finality of the order with respect to the class of documents with which it dealt. The parties agree that only an insubstantial portion of subpoenaed records are "required" and thus subject to production under the order.[3] As a practical matter, the order either excludes evidence (the "non-required" class of documents) within the meaning of § 3731, or is a final decision within the meaning of § 1291 because it denies to the grand jury all "non-required" records. Accordingly, the district court's order is ripe for review.

### (2) The Kent Subpoena

The fifth amendment privilege against self-incrimination applies when the accused is compelled to make a testimonial communication that is incriminating, as was recognized in *Fisher v. United States*, 425 U.S. 391, 408, 96 S.Ct. 1569, 1579, 48 L.Ed.2d 39 (1976). Further, it is settled that the privilege reaches the compelled production of an individual's private books and papers in response to a subpoena or equivalent process, *Boyd v. United States*, 116 U.S.

616, 634–35, 6 S.Ct. 524, 534–35, 29 L.Ed. 746 (1886). The prevailing justification for the fifth amendment's application to documentary subpoenas is the "implicit authentication" rationale, *Fisher*, 425 U.S. at 412, n. 12, 96 S.Ct. at 1582, n. 12. As stated in Wigmore § 2264 at 380 (McNaughton rev. 1961), the testimonial component involved in compliance with an order for production of documents "is the witness' assurance, compelled as an incident of the process, that the articles produced are the ones demanded." As quoted by Cardozo, J. (later Justice) in *People v. Defore*, 242 N.Y. 13, 27, 150 N.E. 585, 590 (1926): "A defendant is 'protected from producing his documents in response to a *subpoena duces tecum*, for his production of them in court would be his voucher of their genuineness.' There would then be 'testimonial compulsion'."

The fifth amendment protection applicable to a sole proprietor's business records is the same as the protection applicable to the records of an individual. *Bellis v. United States*, 417 U.S. 85, 87–88, 94 S.Ct. 2179, 2182–83, 40 L.Ed.2d 678 (1974).[4] This circuit has held that a sole proprietor's fifth amendment privilege against self-incrimination protects the "non-required" records of the proprietorship from compelled production in response to a grand jury subpoena directed to the sole proprietor. *In re Grand Jury Proceedings (McCoy)*, 601 F.2d 162 (5th Cir. 1979); *In re Oswalt*, 607 F.2d 645 (5th Cir. 1979).

The government argues that access of an employee is all that is required. Hence, says the government, because Allen or some other Kent Oil employee *could* au-

---

3. Letter from Kent to the government dated April 27, 1980: "We believe that we have already complied with the first paragraph of [the district court's] order of April 18, 1980."

   Government's reply brief at 8: "We submit that, as a practical matter, is it is inconceivable that all, or even a substantial portion, of the subpoenaed Kent Oil documents are required to be prepared or maintained by federal regulations."

4. It is undisputed, and the district court's order recognizes, that Kent's constitutional protection does not extend to "records required by law to be kept in order that there may be

suitable information of transactions which are the appropriate subjects of governmental regulation and the enforcement of restrictions validly established." *Shapiro v. United States*, 335 U.S. 1, 33, 68 S.Ct. 1375, 1392, 92 L.Ed. 1787 (1948). *Wilson v. United States*, 221 U.S. 361, 380, 31 S.Ct. 538, 544, 55 L.Ed. 771 (1911). *See* generally 8 Wigmore § 2259c at 362–67 (McNaughton rev. 1961). The parties agree that Kent Oil is required to keep records in accordance with 10 C.F.R. § 210.92 (1980), promulgated pursuant to statute by the Department of Energy.

thenticate the records, Kent's testimonial compulsion is not implicated. That position, however, would swallow the privilege. Persons conducting business as sole proprietorships, under the government's contended-for rule, would lose the privilege before the grand jury the moment they hired any employee whose functions would require access to records.[5]

We hold, therefore, that Kent's fifth amendment privilege protects the "non-required" records of Kent Oil from production in response to the Kent subpoena.

### (3) The Allen Subpoena

[5] The government insists on its right to use the Allen subpoena as a vehicle to obtain Kent Oil's records, thereby circumventing Kent's exercise of his fifth amendment privilege. That reach, however, has been foreclosed. In *Couch v. United States*, 409 U.S. 322, 333, 93 S.Ct. 611, 618, 34 L.Ed.2d 548 (1973), as in *Fisher, supra*, the Court was careful, in upholding a summons for records of which the accused had given up all possession, to distinguish situations "where constructive possession is so clear or the relinquishment of possession is so temporary and insignificant as to leave the personal compulsions upon the accused substantially intact".

When the subpoena was served on Allen, she was the comptroller of Kent Oil. Although Kent hired employees to assist in the operation of his business, he never relinquished control of the records to any employee. That Allen had access to the records is irrelevant, for mere access is not possession, custody, or control. Whether Kent be viewed as having clearly retained constructive possession, or as having relinquished possession to the temporary and insignificant extent necessary to enable his employees to perform their functions, delivery of his records in response to the Allen subpoena would "leave the personal compulsions upon [him] substantially intact." *Couch, supra*. To hold that service on Allen meant an absence of personal compulsion upon Kent would thus be to honor form over substance and to render meaningless Kent's fifth amendment privilege.

The foregoing view is confirmed in light of another consideration. The Allen subpoena, if upheld, would be illegal because it would direct her to produce documents not in her possession, custody, or control. Because Allen had mere access, her compliance with the subpoena would have required that she illegally *take* exclusive possession of Kent's documents and deliver them to the grand jury. *See* 5A Moore's Federal Practice § 45.05[1] at 45–32 (2d ed. 1980).

The government relies heavily on *Fisher, supra*. In that case, an Internal Revenue agent interviewed taxpayer in connection with an investigation of possible civil or criminal liability under the tax laws. Shortly thereafter, taxpayer obtained his accountant's workpapers relating to taxpay-

---

**5.** While asserting, correctly, that the grand jury proceeding is here a "criminal proceeding", and that our jurisdiction is therefore present under 18 U.S.C. § 3731 (1976), the government argues that the privilege against compelled self-incrimination is not implicated unless and until Kent is before a jury in a criminal trial, at which point it assures this court it would not tell the jury that Kent produced his records, but would have them authenticated by one of his employees, citing *United States v. Authement*, 607 F.2d 1129 (5th Cir. 1979). First, the privilege is implicated in grand jury proceedings. *Counselman v. Hitchcock*, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892). Second, in *Authement*, Authement had already been indicted when he delivered possession of a physical exhibit (brass knuckles) to his attorney. The government procured the exhibit from the attorney and had it identified at trial by a witness to whom Authement had shown it. The court pointed out, viewing the situation in retrospect, that production of the exhibit did not contribute to Authement's indictment and its use at trial involved no incrimination. *Authement* thus has no relationship to whether the government may compel production before the grand jury of records in the possession of a sole proprietor, compelled production of which by the proprietor is constitutionally foreclosed, on the sole ground that the proprietor's employees having access to his records might authenticate them at a trial. Nor does *Authement*, which dealt with post-indictment events, authorize compelled production before indictment. Nor does *Authement* relate to whether the subpoena *res* (here records, not brass knuckles) might lead to other evidence or injury to a defendant, a question specifically reserved in *Authement*.

er's return. Taxpayer then delivered those papers to his attorney who was retained in connection with the investigation. When the Internal Revenue Service served a summons directing the attorney to produce the papers, he refused to comply. The Court held that compelled production of documents from an attorney into whose possession they had been delivered does not implicate the fifth amendment privilege the taxpayer might have enjoyed if compelled to produce them himself, *Fisher*, 425 U.S. at 402, 96 S.Ct. at 1576. The Court went on to emphasize, however, that the documents sought were the accountant's workpapers, and that taxpayer could not have successfully resisted a subpoena for those papers in his possession on fifth amendment grounds, because the privilege protects taxpayer only against incrimination by his own compelled testimonial communications. *Fisher*, 425 U.S. at 409 & 414, 96 S.Ct. at 1580–82.

The government further relies on *Colucci, supra.* In that case, a subpoena requiring the production of business records was served on the sole proprietor and on his employee who prepared and maintained those records. The court held that an employer's rights under the fifth amendment are not compromised by a subpoena served on his employee to whom he has delegated exclusive responsibility for preparation and custody of business records, *Colucci*, 597 F.2d at 863, emphasizing that the employee was the office manager and had the responsibility of preparing, receiving, filing, and maintaining the subpoenaed records. The court also noted that the sole proprietor was seldom at the business office, operated from his car with radio communication to the office, and delegated management of the office to his employee.

The instant facts are significantly different from those in *Fisher* and *Colucci*. Kent never delivered possession, custody, or control of his records to Allen or anyone else. Allen was never delegated the exclusive responsibility for preparation and custody of the subpoenaed records. Kent is not an absentee proprietor, but actively and personally manages Kent Oil from its offices in Houston and Los Angeles. The holdings in

*Fisher* and *Colucci* are therefore simply inapplicable here.

### Conclusion

We hold that Kent's fifth amendment privilege against self-incrimination protects the "non-required" documents of Kent Oil from production pursuant to the *subpoena duces tecum* directed to Kent. Moreover, Kent's fifth amendment privilege protects those same documents from production pursuant to the *subpoena duces tecum* directed to Dianne Allen. Accordingly, the order of the district court is *affirmed*.

*AFFIRMED.*