**In re GRAND JURY SUBPOENA DUCES TECUM (PASSPORTS) DATED JUNE 8, 1982.**

**Grand Jury No. 82–2(MIA).**

United States District Court,
S. D. Florida,
Miami Division.

Aug. 6, 1982.

Stanley Marcus, U. S. Atty., S. D. Fla., by Carol Wilkinson, Sp. Asst. U. S. Atty., Miami, Fla., for the Government.

William Cagney, III, Miami, Fla., for Witness Manuel Lopez-Castro.

**ORDER GRANTING GOVERNMENT'S MOTION TO ENFORCE GRAND JURY SUBPOENA**

ARONOVITZ, District Judge.

THIS MATTER comes before the Court upon the Government's Motion to Enforce Grand Jury Subpoena. The Government seeks to enforce a subpoena issued to the witness on June 9, 1982, requiring him to produce before the Grand Jury the United States passport issued to him for the period commencing January 1, 1977. The witness is not requested to present any testimony, but merely to produce the passport.

Government's Memorandum of Law at 1. The Court held a hearing on August 3, 1982, at which both the Government and the witness were given a full opportunity to present testimony and documentary evidence. No testimony was introduced by either party; the Government introduced one document into evidence. The Court having considered the Motion and Memorandum of Law in support thereof, the witness' written response thereto, the document received into evidence at the hearing, and the argument of counsel, and being otherwise fully advised in the premises, it is thereupon

ORDERED AND ADJUDGED that the Government's Motion to Enforce Grand Jury Subpoena be, and the same is, hereby GRANTED, as follows: [1]

1. On or before August 10, 1982, or on the date of the first meeting of the Grand Jury thereafter, the witness shall appear at the place of the meeting of the Grand Jury and, outside the presence of the Grand Jury, pursuant to the subpoena duces tecum previously issued, the witness shall produce to the Assistant United States Attorney for transmission to the Grand Jury, the passport sought by the subpoena;

2. The witness shall not be compelled to appear or testify before the Grand Jury for the purpose of producing the passport, and the fact that the witness produced the passport shall not be used as evidence against the witness before the Grand Jury or in any subsequent judicial proceeding;[2]

3. Authentication of the passport produced, if such authentication is necessary, shall be obtained from a source other than the witness;

4. The Government shall, as expeditiously as possible after production of the passport occurs, cause to be issued to the witness a new or duplicate passport, or in lieu thereof, make copies of the original passport and thereupon return the original passport to the witness, or in lieu thereof, the witness shall be afforded a hearing before the appropriate administrative agency under the applicable federal regulations and/or procedures regarding the reasons for failure to provide a passport to the witness.

## MEMORANDUM OPINION

The witness contends that compelling him to produce the passport issued to him violates his protection against self-incrimination under the Fifth Amendment. Consideration of this issue necessarily begins with an examination and application of the Supreme Court's decision in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

In *Fisher*, the Court first discussed its prior ruling in *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), which held that the Fifth Amendment was violated by compulsory production of the private books and papers owned by a defendant. *Fisher, supra*, 96 S.Ct. at 1578–80. Noting that "[s]everal of Boyd's express or implicit declarations have not stood the test of time," *id.* at 1579, the Court further observed:

To the extent ... that the rule against compelling production of private papers rested on the proposition that seizures of or subpoenas for "mere evidence," including documents, violated the Fourth Amendment and therefore also transgressed the Fifth, *Gouled v. United States*, [255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921)], the foundations for the rule have been washed away.

*Id.* at 1580.

The Court in *Fisher* carefully defined and delineated the nature of the Fifth Amendment's protection against self-incrimination:

---

1. To whatever extent, if any, this Order modifies or differs from the Court's *ore tenus* ruling announced at the conclusion of the hearing held on August 3, 1982, this written Order shall be deemed to supersede and control.

2. *See United States v. Davis*, 636 F.2d 1028, 1041 (5th Cir. 1981), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981); *United States v. Authement*, 607 F.2d 1129, 1132 (5th Cir. 1979).

It is ... clear that the Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a *testimonial* communication that is incriminating. [Emphasis in original.] [3]

*Id.* at 1579. Thus, in order to determine whether the Fifth Amendment's protection against self-incrimination is infringed, the analysis should first focus on whether the act of producing the passport in this case constitutes *testimonial* communication by the witness.

As the Supreme Court in *Fisher* reasoned:

A subpoena served on a taxpayer requiring him to produce an accountant's workpapers in his possession without doubt involves substantial compulsion. But it does not compel oral testimony; nor would it ordinarily compel the taxpayer to restate, repeat, or affirm the truth of the contents of the documents sought. Therefore, the Fifth Amendment would not be violated by the fact alone that the papers on their face might incriminate the taxpayer, for the privilege protects a person only against being incriminated by his own compelled testimonial communications. [Citations omitted.] The accountant's workpapers are not the taxpayer's. They were not prepared by the taxpayer, and they contain no testimonial declarations by him. Furthermore, as far as this record demonstrates, the preparation of all of the papers sought in these cases was wholly voluntary, and they cannot be said to contain compelled testimonial evidence, either of the taxpayers or of anyone else. The taxpayer cannot avoid compliance with the subpoena merely by asserting that the item of evidence which he is required to produce contains incriminating writing, whether his own or that of someone else.

*Id.* at 1580–81. Likewise, in the case *sub judice*, the witness is not compelled to give oral testimony. The Government has specifically stated that no testimony from the witness is sought; rather, the Government seeks only production of the passport. Government's Memorandum of Law at 1. Nor is the witness compelled to restate, repeat or affirm the truth of the matters reflected by the passport. The witness does not own the passport; rather, it is the property of the Government. *United States v. Falley*, 489 F.2d 33, 41 (2d Cir. 1973); *Lynd v. Rusk*, 389 F.2d 940, 948 (D.C.Cir.1967); 22 C.F.R. § 51.9.[4] The passport itself does not contain testimonial evidence. The witness himself did not write it,[5] moreover, whatev-

---

**3.** The Court in *Fisher* went on to state:
We have, accordingly, declined to extend the protection of the privilege to the giving of blood samples, *Schmerber v. California*, 384 U.S. 757, 763–764, 86 S.Ct. 1826, 1831–1832, 16 L.Ed.2d 908, 915–916 (1966); to the giving of handwriting exemplars, *Gilbert v. California*, 388 U.S. 263, 265–267, 87 S.Ct. 1951, 1952–1954, 18 L.Ed.2d 1178, 1181–1183 (1967); voice exemplars, *United States v. Wade*, 388 U.S. 218, 222–223, 87 S.Ct. 1926, 1929–1930, 18 L.Ed.2d 1149, 1154–1155 (1967); or the donning of a blouse worn by the perpetrator, *Holt v. United States*, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910). 96 S.Ct. at 1579–80.

**4.** 22 C.F.R. § 51.9 provides:
A passport shall at all times remain the property of the United States and shall be returned to the Government upon demand. That a passport remains the property of the Government follows from the unique function the document serves. A passport is a "letter of introduction in which the issuing sovereign vouches for the bearer and requests other sovereigns to aid the bearer." *Haig v. Agee*, 453 U.S. 280, 101 S.Ct. 2766, 2774, 69 L.Ed.2d 640 (1981), *citing* 3 G. Hackenworth, Digest of International Law § 268, at 499 (1942). "[A] passport remains in a sense a document by which the Government vouches for the bearer and his conduct." *Haig v. Agee, supra*, 101 S.Ct. at 2775. *See also* text herein at p. 724.

**5.** Even if it might be argued that the witness in some sense "wrote" the contents of the passport because his pattern of travel caused specific documentations to be placed therein, the fact that the person asserting the privilege "wrote" the document is insufficient to trigger the privilege. *Fisher*, 96 S.Ct. at 1580 n.11, *citing Wilson v. United States*, 221 U.S. 361, 378, 31 S.Ct. 538, 543 (1911). "And, unless the Government has compelled the subpoenaed person to write the document, [citations omitted], the fact that it was written by him is not controlling with respect to the Fifth Amendment issue." *Fisher*, 96 S.Ct. at 1580 n.11.

er the contents of the passport, the documentations made therein came to exist there as the result of the witness' voluntary actions, and the contents of the passport are not the result of coercion against the witness. Just as in *Fisher*, the witness here cannot avoid compliance with the subpoena merely by asserting that the item of evidence that he is required to produce contains incriminating matters. *Fisher, supra,* 96 S.Ct. at 1580–81.

However, as the Supreme Court in *Fisher* recognized, "[t]he act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced." *Id.* at 1581. The Court identified three (3) aspects in which compelled production of a document may be testimonial: (1) the witness may thereby concede the existence of the documents sought, (2) the witness may concede possession of the documents sought, and/or (3) the witness may be required to concede his belief that the document is in fact that sought in the subpoena, thereby authenticating the document. As the Supreme Court observed:

> The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both "testimonial" and "incriminating" for purposes of applying the Fifth Amendment.

*Id.* at 1581. Having considered these three (3) potentially testimonial aspects of the compelled production of the witness' passport, the Court concludes that compelling such production by the witness will not compel a testimonial communication. *See United States v. Praetorius,* 622 F.2d 1054, 1062–63 (2d Cir. 1979), *cert. denied,* 449 U.S. 860, 101 S.Ct. 162, 66 L.Ed.2d 76 (1980); *United States v. Friedman,* 593 F.2d 109, 118 (9th Cir. 1979).

With regard to the existence and/or possession of the passport, the witness neither admits nor denies the existence and/or possession thereof. The Government intro-

duced into evidence at the hearing a certified State Department document establishing that a passport was issued to the witness on March 30, 1978. Government's Exhibit No. 1, Hearing of August 3, 1982. Although the witness contends that this does not sufficiently establish the current existence of the passport, the Court disagrees. The Government has *prima facie* established the existence of the passport in question, and by conceding its existence the witness "adds little or nothing to the sum total of the Government's information . . . ." *Fisher, supra,* 96 S.Ct. at 1581. With regard to possession and/or location, here again, the Government has established a *prima facie* showing through introduction of Government's Exhibit No. 1. There is no basis upon which to presume, as the witness would have the Court do, that the passport was lost, stolen or destroyed. Accordingly, the Government having made a *prima facie* showing of existence and possession of the passport, by conceding possession and/or location, the witness concedes nothing to the Government that it does not already know. *Id.* at 1581.

With regard to authentication, as in *Fisher*, production would express nothing more than the witness' belief that the document is that described in the subpoena. *Id.* at 1582. If authentication of the passport is necessary, such authentication will be required from a source other than the witness under the terms of the Court's Order. The Supreme Court in *Fisher* noted several cases in which nonowner custodians of records were ordered to respond to a subpoena even though doing so involved a representation that the documents produced were those demanded by the subpoena, and even though the records were kept by the person subpoenaed and his producing them would itself be sufficient authentication to permit their introduction against him. *Id.* at 1582 & n.14.

Moreover, with regard to the authentication requirement, the Fifth Circuit [6] has

---

**6.** Decisions of the Fifth Circuit, as that Court existed on September 30, 1981, are binding as precedent in the Eleventh Circuit and upon this Court. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981).

held that so long as the fact of compliance with the subpoena is not used as evidence to incriminate the producer of the documents, the authentication aspect does not provide a ground for refusing to produce the documents. *United States v. Davis*, 636 F.2d 1028, 1041 (5th Cir. 1981), *cert. denied*, 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981); *United States v. Authement*, 607 F.2d 1129, 1131–32 (5th Cir. 1979).[7] Accordingly, so long as the Government adheres to the ruling of the Court herein and does not use the witness' production of the passport as incriminating evidence against the witness either in the Grand Jury or at any subsequent judicial proceeding, the authentication aspect of production does not render production of the passport testimonial communication protected by the Fifth Amendment.

Accordingly, the Court concludes that under the analysis set forth in *Fisher*, compelled production of the passport will not constitute compelled testimonial communication.[8]

The Fifth Amendment analysis does not end with consideration of *Fisher*, however. The framework for analysis of the Fifth Amendment protection against production of documents has two prongs: first, the *Fisher* analysis of the act of producing the documents, and second, the protection of "private papers" defined in *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524 (1886). *See United States v. Miller*, 660 F.2d 563, 567 (5th Cir. 1981); *United States v. Davis*, *supra*, 636 F.2d at 1041–43. Although the Supreme Court noted in *Fisher* that "several of Boyd's express or implicit declarations have not stood the test of time," 96 S.Ct. at 1579–80, nonetheless *Boyd* has not been overruled, and it retains vitality as it relates to compelling an individual to produce *his own* incriminating "private papers." *United States v. Miller, supra*, 660 F.2d at 567; *United States v. Davis, supra*, 636 F.2d at 1042; *see Fisher v. United States, supra*, 96 S.Ct. at 1582.

██ As previously noted, however, the Government retains ownership of a passport. *United States v. Falley*, 489 F.2d 33, 41 (2d Cir. 1973); *Lynd v. Rusk*, 389 F.2d 940, 948 (D.C.Cir.1967); 22 C.F.R. § 51.9; · *see* note 1 *supra*. A passport is "a letter of introduction in which the issuing sovereign vouches for the bearer and requests other sovereigns to aid the bearer." *Haig v. Agee*, 453 U.S. 280, 101 S.Ct. 2766, 2774, 69 L.Ed.2d 640 (1981), *citing* 3 G. Hackenworth, Digest of International Law § 268, at 499 (1942). As the Supreme Court has observed:

7. The Fifth Circuit in *Authement* quoted and adopted Judge Gibbon's statement in his concurring opinion in the Third Circuit's *Fisher* decision:

[A] subpoena should be enforced even for materials owned and possessed by the witness so long as "(1) the fact of his possession was not of evidentiary significance or his production was not used for that evidentiary purpose, (2) their mere production did not require his testimony, and (3) they could be authenticated through some other witness." *Authement*, 607 F.2d at 1132, *quoting United States v. Fisher*, 500 F.2d 683, 694 (3d Cir. 1974) (Gibbons, J., concurring), *aff'd*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). These three conditions are met in this case.

8. This conclusion is consistent with decisions by the Second and Ninth Circuits that compelled production of a passport does not constitute compelled testimonial communication. *United States v. Praetorius*, 622 F.2d 1054, 1062–63 (2d Cir. 1979), *cert. denied*, 449 U.S. 860, 101 S.Ct. 162, 66 L.Ed.2d 76 (1980); *Unit-

ed States v. Friedman*, 593 F.2d 109, 118 (9th Cir. 1979). The Court notes, however, that the Fifth Circuit's mode of analysis with regard to the authentication aspect of production varies from that employed in *Praetorius* and *Friedman*. *See United States v. Davis*, 636 F.2d 1028, 1041 n.12 (5th Cir. 1981), *cert. denied*, 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981).

At the hearing, the witness' counsel cited *In re Grand Jury Subpoena Duces Tecum*, 466 F.Supp. 325 (S.D.N.Y.1979), in support of the argument that compelling production of the passport would compel testimonial communication under *Fisher*. The Court finds that case distinguishable on two grounds. First, the determination in that case was based in part on a finding that the subpoena was overbroad. Second, the Court there concluded that the Government had in no way established existence and possession of the records. Here, the Government has presented a *prima facie* case of the existence and possession of the passport.

[A passport] . . . is to be considered rather in the character of a political document, by which the bearer is recognized, in foreign countries, as an American citizen; and which, by usage and the law of nations, is received as evidence of the fact.

*Haig v. Agee, supra,* 101 S.Ct. at 2744, *citing Urtetiqui v. D'Arcy,* 9 Pet. (34 U.S.) 692, 699, 9 L.Ed. 276 (1835). "[A] passport remains in a sense a document by which the Government vouches for the bearer and his conduct." *Haig v. Agee, supra,* 101 S.Ct. at 2775. In view of the unique function of a passport, the strong Governmental interest therein, and the fact that the Government retains ownership over it, a passport does not constitute a "private paper" under the *Boyd* analysis.[9] The very purpose and function of a passport belie its classification as a "private paper." One of its functions is to record, document and verify the travels of the holder. Moreover, it is not a "writing" of the holder; the holder of the passport does not commit his own words or thoughts to its contents. Accordingly, because a passport is not equivalent to a "private paper," the interest protected by *Boyd* is not infringed by compelling its production.[10]

Because compelling production of the passport under the terms of the Court's Order neither compels testimonial communication by the witness under *Fisher,* nor infringes the interest protected by *Boyd,* compelling compliance with the subpoena will not violate the witness' Fifth Amendment protection against self-incrimination.

The witness has raised two other objections to production of the passport. First, the witness argues that the Government must satisfy due process requirements to compel production of the passport, because of the effect on the witness' ability to travel abroad, citing *Haig v. Agee, supra.* First, the Court in *Agee* specifically reserved the question of what due process protections are constitutionally required when the Government revokes a passport. 101 S.Ct. at 2783 n.62. Moreover, the Government here does not seek to *revoke* the witness' passport. The Court's Order requires the Government to expeditiously cause a new or substitute passport to be issued, or to make copies of the passport and return the original to the witness. As a third alternative, if the Government seeks to retain the original passport and a new or substitute passport is not issued, the witness shall be afforded a hearing before the appropriate administrative agency under applicable regulations and/or procedures regarding surrender of a passport. Accordingly, no due process violation will occur by compelling production of the passport.

Second, the witness argues that jurisdiction to revoke a passport rests solely with the Secretary of State. As noted above, here the Government does not seek to revoke the passport. Either the original passport will be returned to the witness, or a new or duplicate passport will be issued, or

---

**9.** Although cited in the witness' response, the Court finds *In re Grand Jury Subpoena,* 646 F.2d 963 (5th Cir. 1981) and *In re Grand Jury Proceedings,* 601 F.2d 162 (5th Cir. 1979) distinguishable based on the determination that a passport is not a "private paper" owned by the holder. Both of those cases involved compelling production of the individual's own private business records.

Likewise, *de Antonio v. Solomon,* 42 F.R.D. 320 (D.Mass.1967), cited in the witness' response to the motion, is not persuasive. That case was decided nine (9) years before *Fisher,* and the Court in *de Antonio* undertook no analysis of whether the compelled production of the passport in fact constituted compelled testimonial communication, nor whether the passport was in fact a "private paper" owned by the holder under *Boyd.*

**10.** The Supreme Court has specifically reserved the question of what due process is constitutionally required when the Government revokes a passport. *Haig v. Agee,* 453 U.S. 280, 101 S.Ct. 2766, 2783 n.62, 69 L.Ed.2d 640 (1981). The due process concerns implicated by such revocation stem not from the Government's act of physically taking the passport from the holder, but rather from the resultant effect on the individual's ability to travel abroad. *See Agee, supra,* 101 S.Ct. at 2781–82. *Agee* can in no sense be read to question the Government's ownership of the passport, nor to support the proposition that a passport is a "private paper" of the holder in the *Boyd* sense.

the witness will be afforded a hearing before the appropriate administrative agency under applicable regulations and/or procedures regarding surrender of a passport. The Grand Jury's authority to subpoena documents relevant to its investigation is well-established and beyond question. The witness' assertion that the Secretary of State has exclusive jurisdiction over a passport is unsupported by the applicable statutory and case authority. *See United States v. Praetorius, supra*, 622 F.2d at 1062.

Accordingly, for all of the foregoing reasons, the Motion to Enforce Grand Jury Subpoena is GRANTED, under the conditions set forth herein.