**In re Jonathan CANDIOTTI, A Witness Before Federal Grand Jury.**

No. FGJ 88–2.

United States District Court, S.D. Florida, Fort Lauderdale Division.

Jan. 26, 1990.

Barbara Ward, Office of the U.S. Atty., Ft. Lauderdale, Fla., for plaintiff.

Joel Kaplan, Miami, Fla., for defendant.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the court upon the motion of the government to impose sanctions on the witness, Jonathan Candiotti, for failure to produce his passport for the grand jury. The court heard oral argument on this motion by able counsel. Pursuant to an *ore tenus* order, the parties have filed supplemental memorandums regarding the law on this motion. The motion is ripe for disposition.

Jonathan Candiotti is an apparent Israeli national residing in this country since 1975. He entered the USA with a valid Alien Registration Card, commonly known as a green card, and still possesses a valid card today.

The prosecutor subpoenaed this witness to produce all of his passports for the grand jury. He was to deliver it to the prosecutor who would then, at the witness' option, make a copy of it and return the original. This procedure was apparently adopted to alleviate any due process challenges the defendant might have raised. *See In re Grand Jury Subpoena Duces Tecum, Etc. (Passports),* 544 F.Supp. 721 (S.D.Fla.1982) (Aronovitz, J.)).

The government obviously believes Candiotti has a passport, but they have offered no State Department or Israeli government documentation that any passport was actually issued. The government also has no information that the witness' passport, if there is one, was ever stolen or fraudulently obtained.

However, in a criminal case against the witness' twin brother, David, presently pending before the Honorable William Zloch, Judge, the government has evidence that David Candiotti traveled on his brother's passport.

The government does not consent to use immunity allowed under 18 U.S.C. §§ 6002–03. The government also disagrees with the conditions placed on production of a passport imposed by Judge Aronovitz in the case of *In re Grand Jury Subpoena Duces Tecum, Etc. (Passports),* 544 F.Supp. 721 (S.D.Fla.1982). The judge ordered production, but noted the following three conditions: (1) the act of production could not be used to authenticate the passport, (2) the witness would not be compelled to offer oral testimony on the act of production and the fact that the witness produced the passport could not be used as evidence against him in later grand jury or judicial proceedings, and (3) the prosecutor would make provision for return or replacement of the passport or provide the witness with a hearing on the passport's revocation. Here, the prosecutor agrees to condition #3, but expressly refuses to forego using the act of production for authentication or as evidence.

Candiotti expresses a fear that the passport will incriminate him and that he faces prosecution by both Israeli and American authorities. *See* 18 U.S.C. § 1544 (prosecution by U.S. for misuse of *any* passport, American or foreign); 18 U.S.C. §§ 2, 371 (culpability of a principal and conspiracy to commit offense or to defraud U.S.).

The issue in this case is what Fifth Amendment protection, if any, attaches to the act of a foreign national who resides in

the United States who is requested to produce his passports.

In discussing the factors a trial judge should consider when faced with a self-incrimination issue, the Supreme Court has noted that unless it is "perfectly clear" that the witness' invocation of the right is mistaken and that the answer "cannot possibly" tend to incriminate, then the judge should sustain the witness' objection. *See Hoffman v. United States*, 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1951).

There are two key components of this court's inquiry: (1) is the act of production testimonial, and (2) is a passport sufficiently public to be outside the scope of the Fifth Amendment.

■ Examining these in order, the act of production *is* testimonial. The key case is *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). There, the Court stated,

> The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer [witness]. It also would indicate the taxpayer's belief that the papers are those described in the subpoena ... The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both "testimonial" and "incriminating" for purposes of applying the Fifth Amendment. These questions do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof. 425 U.S. at 410–11, 96 S.Ct. at 1581.

In *Fisher*, the Court found that accountant's workpapers should be produced. However, the case is especially significant in light of the Court's refusal to adopt a per se ruling regarding the testimonial implications of producing documents. In *Fisher*, the accountant and not the taxpayer had possession of the documents. Here,

the witness has his passport, if there is one. Further, the papers there belonged to the accountant, not the taxpayer. Here, the issue is the witness' own passport. In *Fisher*, the existence and location of the workpapers was a "foregone conclusion" and the taxpayer's act of production would "add[ ] little or nothing to the sum total of the Government's information by conceding that he in fact has the papers." 425 U.S. at 411, 96 S.Ct. at 1581. In this case, the government has produced only one piece of evidence that Candiotti was ever issued a passport by Israel. In the case against David Candiotti, Judge Zloch found as a fact that David has traveled on Jonathan's passport. The government contends that this proves the *existence* of the passport. However, this does not make its existence a "foregone conclusion". Jonathan Candiotti entered the county on a green card and there is no alleged requirement that he also have a passport to reside here. Further, the government would certainly not rely on Judge Zloch's finding of fact *alone* at a trial against Jonathan for misuse of his passport. To date, the government has not produced any evidence that Israel ever issued a passport to Jonathan. Therefore, unlike *Fisher*, the passport's existence is in question.

Furthermore, the passport's *location* is also at issue. Should David be found with it or if Jonathan states that he does not have the passport, this fact could be incriminating against Jonathan if he gave the passport to another for travel. The fact of nonpossession could have evidentiary value in a case involving the above discussed charges.

The final testimonial aspect, the witness' belief that the documents produced are those requested in the subpoena, is also at issue in this case. However, the witness is not called to speculate, via his own mental processes, about some vague category of documents. *See In re Grand Jury No. 86–3 (Will Roberts Corp.)*, 816 F.2d 569, 573 (11th Cir.1987) (holding subpoena invalid as to "other records which identify the purpose of the check(s), and the identities and addresses of the parties involved in the

transaction represented by this check(s)"). The nature of a passport is understood and the subpoena is unambiguous in that it requests "all" of Candiotti's passports, regardless of country of issuance.

However, this third element also involves the witness' act in authenticating the documents. By producing certain documents in response to the subpoena, the witness is agreeing that the produced documents are authentic. Judge Aronovitz attempted to get around this problem by conditioning production on the limitation that the government not use the act of production as evidence of the authenticity of the passport. Aside from the fact that the government here refuses to so stipulate, this court believes such a condition on production would be improper. By conditioning production, the judiciary is usurping the executive's ability to grant use immunity. This is exactly the concern expressed in another important case, *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), by the Supreme Court. In all fairness, Judge Aronovitz was presented with a different issue. In his case, the government produced into evidence "a certified State Department document establishing that a passport was issued to the witness". 544 F.Supp. at 724. Here, the prosecutor has introduced no such documents from either the United States State Department or the nation of Israel. Finally, the government claims that authenticity is not an issue because a passport is self-authenticating. Government's Supplemental Memo. at 4. But, there is no citation to any legal authority to support this allegation and this court could find no legal basis for this bold assertion.

The two cases which hold a passport to be nontestimonial are distinguishable. In Judge Aronovitz's case, the passport's existence and location were not in question. Further, authenticity was also not at question because the judge specifically ordered that the act of production could not be used as evidence. In *United States v. Praetorius*, 622 F.2d 1054 (2nd Cir.1979), the Circuit Court adopted the lower court's determination on two grounds: (1) existence and location were not at issue, and (2) the passport

itself was not testimonial. The first element is not true in this case. The second element goes to the public nature of the document, discussed below, and is not really a valid consideration. As noted in *Fisher*, the mere act of production is testimonial, even if the contents of the passport are not. Also noteworthy is *Doe*. The case concerned certain records of a sole proprietorship. The Supreme Court declined to overturn both lower courts' decision refusing to order production. As noted in footnote 11 (465 U.S. at 613, 104 S.Ct. at 1242), the district court found that:

> With few exceptions, enforcement of the subpoenas would compel [respondent] to admit that the records exist, that they are in his possession, and that they are authentic. These communications, if made under compulsion of a court decree, would violate [respondent's] Fifth Amendment rights ... The government argues that the existence, possession and authenticity of the documents can be proved without [respondent's] testimonial communication, but it cannot satisfy this court as to how that representation can be implemented to protect the witness in subsequent proceedings. (citation omitted).

The next component of this court's inquiry is the question that the parties addressed in their supplemental memorandums: To what extent a passport is a public document. This issue is relevant for two reasons. First, the Fifth Amendment only applies to private papers, *see Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), *as explained in Wilson v. United States*, 221 U.S. 361, 380, 31 S.Ct. 538, 544, 55 L.Ed. 771 (1910), and second, there is a required public records exception to the Fifth Amendment, which mandates production even if the documents are incriminating, *see e.g. In re Grand Jury Subpoena Duces Tecum, Underhill*, 781 F.2d 64 (6th Cir.1986) (odometer records); *Connor v. Alderman*, 159 So.2d 890 (Fla. App. 2nd DCA 1964) (citrus records).

The required public records exception has three elements, as discussed by the Supreme Court in *Grosso v. United States*,

390 U.S. 62, 67–68, 88 S.Ct. 709, 713, 19 L.Ed.2d 906 (1968): (1) the purpose of the United States' inquiry must be essentially regulatory, not prosecutorial, (2) information is to be obtained by requiring the preservation of records of a kind which the regulated party has customarily kept, and (3) the records themselves must have assumed "public aspects" which render them at least analogous to public documents.

■ Based on these elements and the facts here, the court finds that a passport is not a required public document. First, it is voluntarily obtained. Further, obtaining a passport is a single act, not a systematic collection of records envisioned by the exception. Finally, the passport is not required to be preserved. It can be surrendered after travel or even before, if no travel is consummated.

■ Therefore, the question is whether a passport is a public paper outside the protection of the Fifth Amendment.

In response to this court's *ore tenus* order, the government filed a supplemental memorandum listing the following grounds why a passport is a public document. It is very interesting that the prosecutor focused almost her entire argument on U.S. passports. Of course, the passport here, if it even exists, is Israeli.

Pursuant to 22 C.F.R. § 51.9, "A passport shall at all times remain the property of the United States and shall be returned to the Government upon demand." The prosecutor here claims that Israeli law is the same. However, to substantiate that an Israeli passport remains the property of that government, the prosecutor relies upon an alleged telephone call to some authority. She offers no American or Israeli legal authority to support this allegation.

Questions of foreign law are a matter of fact to be determined after an adversary presentation by the parties. *See* Federal Rule of Criminal Procedure 26.1. Based on the absence of evidence in this record, the court has no idea what interest the witness has in his passport under Israeli law.

The government also discusses the various provisions dealing with aliens in this country. Pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, immigration officials can take "evidence" on an individual's immigration status in this country. 8 U.S.C. § 1357(b). The prosecutor makes the logical extension that this phrase would include passports. Moreover, the person applying for a U.S. passport must furnish any necessary information to the Secretary of State to obtain it. *See* 22 U.S.C. § 213. Based on this requirement, the person who voluntarily applies for a passport impliedly waives his Fifth Amendment privilege as to the information contained in the document. *See Fisher v. United States*, 425 U.S. 391, 411, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976); *United States v. Doe*, 465 U.S. 605, 610, 104 S.Ct. 1237, 1240, 79 L.Ed.2d 552 (1984); *In re Grand Jury Subpoena Duces Tecum, Etc. (Passports)*, 544 F.Supp. 721, 723–24 (S.D.Fla.1982) (Aronovitz, J.). Finally, at the nation's borders, the INS has broad powers to require basically any proof it needs before allowing a party to leave or enter the U.S. *See* 8 C.F.R. § 235.1(b) and (d)(1). Of course, the INS has the authority to arrest anyone who is in the country illegally. *See* 8 U.S.C. § 1357.

The witness has also filed a memorandum. He makes a number of arguments. First, Candiotti points out that contrary to the government's assertion, he is not subject to INS checks at any time. He has been in the country since 1975 on a valid green card. Given his valid registration, Candiotti argues that he would not be required to produce his Israeli passport if INS so requested.

Furthermore, INS would have to comply with the Fourth Amendment's requirements of probable cause to arrest and reasonable suspicion to stop and question. Candiotti also notes that he is not subject to the near absolute power of immigration at the borders since he is not now seeking to exit the United States.

The underlying rationale of the witness' argument is that he is protected by the United States Constitution including the Fifth Amendment. If INS wants his passport, they can ask for it, but he can appar-

ently decline to produce it since his green card, if valid, would be sufficient proof of legal residence. Furthermore, even if he declines to produce the passport, the government cannot compel production since the Fifth Amendment would protect him. The most that they could do is to institute deportation proceedings for noncompliance with INS investigations. However, given his green card, he would probably prevail on such a claim.

Therefore, the only way to defeat the witness' invocation of the Fifth Amendment is to hold that a passport is a public document outside its protection. However, this court cannot make a finding of the Israeli law regarding passports. This is relevant in the sense that there may be no Fifth Amendment expectation of privacy in passports. While the witness may have a privacy interest in the document itself and the contents thereof, he may have waived any Fifth Amendment privilege when he applied for the passport. However, once again, this determination requires examination of Israeli law.

The last point emphasized by the witness is that he fears not only U.S. prosecution, but penalties under Israeli law. The Supreme Court has never decided whether fear of foreign prosecution is sufficient to invoke the privilege. *See Murphy v. Waterfront Comm.*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964) (rejected separate sovereign principle so that fear of prosecution by state or federal government is sufficient threat of incrimination); *Zicarelli v. New Jersey Investig. Comm.*, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972) (issue of foreign prosecution raised but not decided; only a proper consideration if witness demonstrates there is a "real danger" of foreign prosecution). As to the *Zicarelli* test, the witness here asserts that the showing of "real danger" rests upon the government. However, the Supreme Court's opinion is contrary. The witness must show this to prove the incriminatory element of the privilege.

Although this is a difficult case, the court finds that the Fifth Amendment is applicable. The green card complicates

matters in the sense that INS queries may be limited to its legality, without the need to view a passport. The inquiry which neither side really answers is the very question this court required supplemental memorandums on; namely, can the U.S. government through one of its branches require Candiotti to surrender his passport? For the reasons stated above, this court answers "no".

The movant bears the burden of proof in this case since the government is seeking an affirmative of the proposition. The standard for obtaining production is demanding. For the reasons stated above, the court finds that the government has not proved the United States is entitled to the relief sought.

Having considered the record in this cause and being otherwise duly advised, it is hereby

ORDERED AND ADJUDGED that the motion by the United States to impose sanctions upon the witness, Jonathan Candiotti, and to order production of his passport is DENIED.

DONE AND ORDERED.